

U.S. Department of Justice

United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St N.W*
*Washington, D.C. 20530*

07-109-2 (RMC)

July 18, 2008

Aron Raskas, Esq.
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, MD 21202-3201
araskas@kg-law.com

**FILED**

JUL 21 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Re: <u>Gold & Silver Reserve, Inc.</u>

Dear Mr. Raskas:

This letter sets forth the full and complete plea offer to your client, Gold & Silver Reserve, Inc. (referred to herein as "Company" or defendant). This offer is by the Criminal Division (including the Fraud and Public Corruption Section and the Asset Forfeiture Unit) of the United States Attorney's Office for the District of Columbia (the "Office") and the Criminal Division (including the Computer Crime and Intellectual Property Section and the Asset Forfeiture and Money Laundering Section) of the U.S. Department of Justice ("Department") and is binding upon both. This plea offer will expire on July 18, 2008. Upon receipt, the executed letter will itself become the plea agreement. The terms of the offer are as follows:

1. **Charges and Statutory Penalties**

The Company agrees to plead guilty to Count One and Count Two of the Superseding Indictment charging violations of Title 18, United States Code, Section 1956(h) (Conspiracy to Engage in Money Laundering) and Title 18, United States Code, Section 371 (Conspiracy to Operate an Unlicensed Money Transmitting Business). Your client understands that, pursuant to 18 U.S.C. § 1956, the maximum sentence that can be imposed is a fine of $500,000, or a fine of twice the value of the property involved in the money laundering transactions, a $400 special assessment, a five-year term of probation, an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made. Your client understands that, pursuant to 18 U.S.C. § 371, the maximum sentence that can be imposed is a fine of $500,000, a $400 special assessment, a five-year term of probation, an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made.

In consideration of your client's plea to the above offenses, your client will not be further prosecuted criminally by this Office or the Department for the conduct set forth in the attached Statement of Offense or for conduct of which the Government is aware as of the entry of this Plea Agreement. At the conclusion of the sentencing hearing, the Government will move to dismiss the

remaining counts in the Superseding Indictment. Your client agrees that with respect to any and all dismissed charges your client is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

2. **Factual Stipulations**

The Company agrees that the attached "Statement of the Offense" fairly and accurately describes its actions and involvement in the money laundering and unlicensed money transmitting conspiracies. An authorized representative of the Company will admit that the Company is in fact guilty. By virtue of corporate resolution dated July 17, 2008, defendant has authorized this plea and has empowered its outside counsel, Aron Raskas, to act on its behalf for purposes of this plea. It is anticipated that prior to or during the Rule 11 plea hearing, the company, through counsel, will adopt and sign the Statement of the Offense as a written proffer of evidence.

3. **Sentencing Guidelines Stipulations**

The Company understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the guidelines and policies promulgated by the United States Sentencing Commission, Guidelines Manual 2005 (hereinafter "Sentencing Guidelines" or "U.S.S.G"). Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties stipulate to the following:

**Offense Level Under the Guidelines**

Money Laundering

§ 2.S1.1

| | | |
|---|---|---|
| (a) Base Offense Level | | 8 |
| Value of laundered funds of more than $1,000,000 | | 16 |
| (b) Specific Offense Characteristics | | |
| 2S1.1 (b)(1) – knowledge or belief that funds were involved in child exploitation | | 6 |
| 2S1.1(b)(2) – conviction under 18 USC 1956 | | 2 |
| TOTAL: | | 32 |

2

Conspiracy (Operation of Unlicensed Money Transmitting Business)

§ 2S1.1

|  |  |  |
|---|---|---|
| (a) Base Offense Level |  | 8 |
| Value of laundered funds of more than $1,000,000 |  | 16 |
| (b) Specific Offense Characteristics |  |  |
| 2S1.1 (b)(1) – knowledge or belief that funds were involved in child exploitation |  | 6 |
|  | TOTAL: | 30 |

In accordance with the above, and in accordance with Chapter Eight of the Sentencing Guidelines, the applicable Guidelines Offense Level for the money laundering violation is 32 and the conspiracy (operation of unlicensed money transmitting business) violation is 30. The parties agree that the offenses of money laundering and conspiracy (operation of an unlicensed money transmitting business) group under USSG § 3D1.1, resulting in a total offense level of 32. The appropriate Guideline Fine is the greater of the amount calculated pursuant to USSG § 8C2.4 or twice the value of the funds laundered. The Company agrees that a Stipulated Fine in the amount of $3,738,387.30 would be an appropriate part of its sentence. The parties agree that under the Sentencing Guidelines neither a downward nor an upward departure from the Stipulated Fine set forth above is warranted, except as set forth herein. Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein. Nor will either party suggest that the Court consider such a departure or adjustment except as set forth herein.

4. **Agreement as to Sentencing Allocution**

The parties further agree that a sentence of the Stipulated Fine would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, Section 3553(a). The Company reserves its right to argue for a reduction of the Stipulated Fine based on the Company's inability to pay pursuant to USSG § 8C3.3. The Government will not object to the Company's argument regarding its inability to pay the Stipulated Fine if, after reasonable inspection of the Company's financial records, the Government agrees that the Company is truly unable to pay the Stipulated Fine.

Nothing in this Plea Agreement limits the right of the Government to seek imposition of an adjustment for obstruction of justice, see U.S.S.G. §3C1.1, regardless of any stipulation set forth above, should the Company move to withdraw its guilty plea after it is entered, or should it be determined that the Company has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Plea Agreement, that constitutes obstruction of justice or (ii) engaged in additional criminal conduct after signing this Plea Agreement.

5. **Court Not Bound by the Plea Agreement**

It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B) the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Guidelines fine, or other sentencing issues. In the event that the Court considers any Guidelines adjustments, departures, or calculations different from any stipulations contained in this Plea Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in Title 18, United States Code, Section 3553(a), the parties reserve the right to answer any related inquiries from the Court.

6. **Court Not Bound by the Non-Mandatory Sentencing Guidelines**

It is understood that the sentence to be imposed upon the Company is determined solely by the Court. It is understood that the Sentencing Guidelines are not binding on the Court. The Company, through counsel, acknowledges that its entry of a guilty plea to the charged offense authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence, which may be greater than the applicable Guidelines fine. The Government cannot, and does not, make any promise or representation as to what sentence the Company will receive. Moreover, it is understood that the Company will have no right to withdraw its plea of guilty should the Court impose a sentence outside the Guidelines fine.

7. **Restitution**

In addition to the other penalties provided by law, the Court may also order that the Company make restitution. The Government believes that no restitution is applicable under the relevant restitution statutes, and is not seeking restitution in this case. However, the Government's position is not binding on the Court and the Court may order restitution. Restitution is payable immediately unless ordered otherwise by the Court.

8. **Wiring of Plea Agreement**

The Company understands and acknowledges that this Agreement and any plea of guilty which it may enter pursuant to this Plea Agreement are contingent upon the entry of guilty pleas by co-defendants, Douglas L. Jackson, Barry K. Downey, Reid A. Jackson, and e-gold, Ltd., in this case. If these co-defendants fail to enter a guilty plea, this Plea Agreement and any proceedings pursuant to this Plea Agreement may be withdrawn or voided at the discretion of the Government.

9. **Forfeiture**

Criminal Forfeiture. The Company agrees to criminal forfeiture in the form of a money judgment of $1,750,000.00, which it agrees constitutes an amount of funds involved in the offenses to which it will plead guilty. The Company agrees that it and defendant e-gold, Ltd. will be jointly and severally liable for satisfaction of the money judgment. In order to effectuate this criminal

4

forfeiture, the Company agrees to the entry of a Consent Order of Forfeiture, a copy of which is attached hereto. The defendant agrees to waive the requirements of Federal Rules of Criminal Procedure 32.2 regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant understands that the forfeiture of assets is part of this Plea Agreement and waives any failure by the Court to advise it of this, pursuant to Rule 11(b)(1)(J), at the time its guilty plea is accepted.

Civil Action 07-1337 (RMC). The Company agrees to withdraw its claim to the entire defendant res (personal property) that the Government has sued in the civil forfeiture case pending in the United States District Court for the District of Columbia identified as *United States v. All Property In/Underlying E-Gold Account Numbers 544179 & 109243*, Civil Action 07-1337 (RMC), and to consent to entry of a Final Order of Forfeiture of the defendant res, in favor of the United States. Upon entry of a final order of forfeiture in Civil Action 07-1337 (RMC), and unless final judgment in favor of the United States in Civil Action 07-1337 is ever set aside, the United States will credit the value of the property forfeited in 07-1337 (including accrued interest) to the amount owed to the United States as a result of the criminal forfeiture ($1.75 million money judgment) to which the defendant consents in this pending criminal case.

The Company agrees that 29,040.41 ounces of e-silver (worth approximately $526,212.23) and various amounts of other e-metal currently exist in e-gold accounts 544179 and 109243, and that the property in these accounts was never liquidated and provided to the Government as was required pursuant to the seizure warrant and Court Order dated March 10, 2008 (which Order required the Company to liquidate $275,000 of e-silver to repay the Government for funds it released to counsel for defendant/claimant e-gold, Ltd.). The Government agrees not to seek remuneration for the $275,000 from any other source. As set forth below, the Company agrees to withdraw, in part, the claim it filed to the defendant res in Civil Action 05-2497 (RMC) to effectuate a forfeiture in 05-2497 that the parties agree will constitute satisfaction of defendant's (or codefendants') current payment and repayment obligations. In return, the Government agrees to relinquish all rights and interests to the e-silver and other e-metal currently in e-gold accounts 544179 and 109243, and agrees to consent to a request by the Company that the Court rescind its order seizing or freezing the property interest that remains in e-gold accounts 544179 and 109243.

Civil Action 05-2497 (RMC). The company agrees to withdraw its claim to $526,212.23 of the defendant res that the Government has sued in the civil forfeiture case pending in the United States District Court for the District of Columbia and identified as *United States v. All Funds Seized From or On Deposit in SunTrust Account Number 1000028078359, in the Name of Gold and Silver Reserve, Inc., and All Funds on Deposit in Regions Bank Account Number 67-0919-4851, in the Name of Gold and Silver Reserve, Inc.,* Civil Action 05-2497 (RMC), and to consent to entry of a Final Order of Forfeiture of $526,212.23 of the defendant res (and all accrued interest, if any), in favor of the United States. The parties agree to disposition of the remainder of the defendant res ($315,685.23) as discussed below. Upon entry of a final order of forfeiture in Civil Action 05-2497 (RMC), and unless final judgment in favor of the United States in Civil Action 05-2497 is ever set aside, the United States will credit the value of the property forfeited in 05-2497 (including accrued

5

interest) to the amount owed to the United States as a result of the criminal forfeiture ($1.75 million money judgment) to which the defendant consents in this pending criminal case.

In addition, if all claimants in Civil Action 05-2497 (RMC) consent, the Government agrees to make the remaining $315,685.23 of seized funds available to the Company, or other persons who filed claims to the funds sued in Civil Action 05-2497 (RMC), if all claimants file with the Court a certification under oath that the funds seized are necessary and will be used for costs relating to complying with the terms of this plea agreement. In the event that the Company certifies that less than $315,685.23 is necessary and will be used for such costs, the remaining funds will be forfeited and the Company agrees to entry of a Consent Order of Forfeiture in that case. The Government agrees to dismiss Civil Action 05-2497 (RMC) once the seized funds are either forfeited or returned to the Company or other claimants.

The Government agrees that $1.75 million will constitute the total amount forfeitable to the Government as a result of the crimes to which the defendant will plead guilty.

The defendant warrants that it, and/or e-gold, Ltd., is/are the sole owner(s) of the property sued as the defendant in rem in Civil Actions 07-1337 (RMC) and 05-2497 (RMC) and agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizures and forfeitures, or attempted forfeitures, of all such money and property, including but not limited to court costs, legal expenses and attorney's fees.

The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant acknowledges that all property covered by this Plea Agreement is subject to forfeiture as proceeds of or property involved in its illegal conduct (or substitute assets for property otherwise subject to forfeiture).

Further, the Company agrees not to contest or file any claim of interest in "e-gold" accounts that it maintains for unrelated customers and that may be subject to a civil or criminal forfeiture, including civil forfeiture cases now pending and in which it has not previously filed a claim.

10. **Registration as a Money Services Business**

The Company agrees that it and e-gold, Ltd. are "financial institutions" as defined in 31 U.S.C. § 5312(a)(2) and are money services businesses under 31 C.F.R. § 103.11(uu)(5). Further, the Company agrees that the e-gold operation (including both e-gold, Ltd. and Gold & Silver Reserve, Inc. doing business as OmniPay) is a money transmitting business within the meaning of 18 U.S.C. § 1960, and, as such, may not operate without a money transmitting license in States that require licensing of businesses engaged in money transmitting and without registration with the

6

Department of Treasury (FinCEN) pursuant to 31 U.S.C. § 5330 and 31 C.F.R.§ 103.41. Accordingly, the Company will not engage in operation of the e-gold digital currency system, or any other digital currency system, until it has registered with FinCEN. In addition, within thirty (30) days of entering this Plea Agreement, the Company will submit applications to obtain State licenses in States that require licensing of businesses engaged in money transmitting or submit a request for an advisory opinion from such a State that the Company is not required to be licensed. The Company shall obtain any State license to engage in money transmitting (or advisory opinion stating that a license is not required) within six (6) months of entry of this Plea Agreement or stop conducting business in any State where such money transmitting license (or advisory opinion) has not been obtained.

11. **Service of Process**

The Company agrees that it and e-gold, Ltd. will accept service of process at the business location in Melbourne, Florida or any other United States location from which they operate, including the location of any owner, or principal, regardless of whether that is the location of the principal place of business, incorporation, or registration.

12. **Anti-Money Laundering Program**

The Company agrees that it and e-gold, Ltd. are "financial institutions" as defined in 31 U.S.C. § 5312(a)(2) and are subject to the requirements to establish an anti-money laundering program in 31 U.S.C. § 5318(h) (applicable to financial institutions) and 31 C.F.R. § 103.125 (applicable to money services businesses). The Company agrees that it and e-gold, Ltd. will establish and maintain a Bank Secrecy Act compliance program, including an anti-money laundering program with internal controls, independent testing and other measures to detect and report potential money laundering, terrorist financing and other suspicious activity. Pursuant to 31 U.S.C. § 5318(h), this shall include, at a minimum, (A) the development of internal policies, procedures, and controls; (B) the designation of a compliance officer; (C) an ongoing employee training program; and (D) an independent audit function to test programs. Further, the Company acknowledges that it and e-gold, Ltd. , as currently operating, are a "high risk" operation with respect to money laundering and agrees that the anti-money laundering program to be established will be commensurate with those risks pursuant to 31 C.F.R. § 103.125. Additionally, the Company agrees to the following:

(a) **Consultant**: The Company will retain an independent service to assist in establishing an appropriate anti-money laundering program and ensure compliance with money laundering laws. The consultant selected to provide this service shall be compensated for its services by the Company or e-gold, Ltd. at prevailing market rates and will issue a report within ninety (90) days of the entry of this Plea Agreement to both the Company and e-gold, Ltd. and this Office and the Department (through the supervising unit described in paragraph 13) which describes e-gold, Ltd.'s and Gold & Silver Reserve, Inc.'s current anti-money laundering programs and

provides a plan to bring the companies into compliance with anti-money laundering laws.

(b) **User Agreement and Website Disclaimer:** The Company agrees to establish policies and procedures for prohibiting use of the e-gold digital currency system, any and all businesses and entities associated with the e-gold digital currency system, for criminal activity and to publicize those procedures in its User Agreement within ten (10) days of the entry of this Plea Agreement. Within ten (10) days of the entry of this Plea Agreement, the Company agrees to prominently display a disclaimer on the e-gold website, or any other website with which the Company is associated, to the effect that use of the e-gold system for criminal activity is not tolerated and e-gold is an entity subject to U.S. financial regulations.

(c) **Customer Identification**: The Company agrees that it and e-gold, Ltd. will, pursuant to 31 U.S.C. § 5318(l) and 31 C.F.R. § 103.125, establish procedures for verifying customer identification. From the entry of this Plea Agreement, no new Omnipay account shall be opened without being in compliance with 31 U.S.C. § 5318(l) and 31 C.F.R. § 103.125. Following ninety (90) days of the entry of this Plea Agreement, no new e-gold or other digital currency account shall be opened, or if that is not reasonable and practicable, permitted to engage in any transactions (other than those incident to the Customer Identification process), without being in compliance with 31 U.S.C. § 5318(l) and 31 C.F.R. § 103.125. All existing e-gold, OmniPay or other digital currency accounts must be brought into compliance with 31 U.S.C. § 5318(l) and 31 C.F.R. § 103.125 or closed within ninety (90) days. As part its anti-money laundering program, the e-gold operation will engage an outside vendor within thirty (30) days of the entry of this Plea Agreement to provide services in proactively searching the Internet for instances where "e-gold" is being used for criminal purposes.

(d) **OFAC Compliance**. The Company will ensure compliance of the e-gold digital currency system with all applicable regulations of the Department of Treasury, Office of Foreign Assets Control (OFAC). From the entry of this Plea Agreement, no new e-gold, Omnipay or other digital currency account shall be opened, nor shall any transactions be conducted, without being in compliance with OFAC regulations prohibiting transactions from sanctioned countries. Compliance with remaining OFAC regulations, including the blocking of transactions involving Specially Designated Nationals, shall be in accordance with the timeframe required above for customer identification measures. All existing and newly created e-gold, OmniPay or other digital currency accounts must be brought into compliance with OFAC regulations or closed within ninety (90) days of the entry of this Plea Agreement.

(e) **Suspicious Activity Reports**: The Company agrees that it and e-gold, Ltd. will, pursuant to 31 U.S.C. § 5318(g) and 31 C.F.R. § 103.20, report suspicious transactions detected on or after the entry of this Plea Agreement relevant to a possible violation of law or regulation by its customers.

(f) **Audit**: The Company will engage an independent third party auditor to identify all gold bars held by the e-gold operation and to conduct an accounting of the e-gold book transfer system to confirm that the amount of e-gold in circulation is fully backed by gold bullion held in allocated storage. The auditor selected to perform this audit shall be compensated for its services by the Company and/or e-gold, Ltd. at prevailing market rates and will issue a report within ninety (90) days of the entry of this Plea Agreement to both the Company and e-gold, Ltd., and this Office and the Department (through the supervising unit described in paragraph 13).

13. **Supervision**

In accordance with the above listed statutory and regulatory provisions, the Company agrees that it and e-gold, Ltd. will submit to supervision by the Internal Revenue's Bank Secrecy Act Division ("supervising unit"). This supervising unit will supervise the Company and e-gold, Ltd. for compliance with the above listed provisions for a period of three years. During this period of time, the supervising unit will perform regular and/or continuous supervision of operations, transactions, and related compliance programs of the Company and e-gold, Ltd. Thereafter, the supervising unit may supervise compliance of the operation in accordance with its regulatory authority. Based upon the determinations of the supervising unit, compliance recommendations will be made regarding the adherence of the Bank Secrecy Act Provisions contained in Title 31, Code of Federal Regulations, Part 103.

14. **Public Statements**

The Company expressly agrees that it, its employees, and its directors shall not make any public statement contradicting any statement of fact contained in the Statement of Offense or any provision of this Plea Agreement for a period of three years from the entry of this Plea Agreement. Any such contradictory public statement by the Company, its employees, or its directors shall constitute a breach of this Plea Agreement as governed by paragraph 16 of this Plea Agreement, and the Company would thereafter be subject to prosecution pursuant to the terms of this Plea Agreement. The decision of whether any statement by any such person contradicting a fact contained in the Statement of Offense or provision of this Plea Agreement will be imputed to the Company for the purpose of determining whether the Company has breached this Plea Agreement shall be in the sole discretion of the United States. Upon the United States' notifying the Company of a public statement by any such person that in whole or in part contradicts a statement of fact contained in the Statement of Offense, the Company may avoid breach of this Plea Agreement by publicly repudiating such statement within 48 hours after notification by the United States.

15. **Transfer of Business**

The Company agrees that, if it sells, merges or otherwise transfers all or substantially all of the business operations as they exist as of the entry of this Plea Agreement to a single purchaser or group of affiliated purchasers for a period of three years from the entry of this Plea Agreement, it shall include in any contract or agreement for sale, merger, or transfer a provision binding the purchaser/successor to the obligations described in paragraphs 10 through 13 of this Plea Agreement for a period of three years from the entry of this Plea Agreement.

16. **Breach of Agreement**

The Company understands and agrees that if, after entering this Plea Agreement, it fails specifically to perform or to fulfill completely each and every one of its obligations under this Plea Agreement, or engages in any felony criminal activity prior to sentencing, it will have breached this Plea Agreement. In the event of such a breach: (a) the Government will be free from its obligations under the Plea Agreement; (b) the Company will not have the right to withdraw the guilty plea; (c) the Company shall be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the Government will be free to use against the Company, directly and indirectly, in any criminal or civil proceeding, all statements made by its employees and directors and any of the information or materials provided by the Company, including such statements, information and materials provided pursuant to this Plea Agreement or during the course of any debriefings conducted in anticipation of, or after entry of this Plea Agreement, including statements made on behalf of the Company during proceedings before the Court pursuant to Fed. R. Crim. P. 11.

The Company acknowledges discussing with you Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410, rules which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. The Company knowingly and voluntarily waives the rights which arise under these rules.

The Company understands and agrees that the Government shall only be required to prove a breach of this Plea Agreement by a preponderance of the evidence. The Company further understands and agrees that the Government need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

Nothing in this Plea Agreement shall be construed to permit representatives of the Company to commit perjury, to make false statements or declarations, to obstruct justice, or to protect the Company from prosecution for any crimes not included within this Plea Agreement or committed by the Company after the execution of this Agreement. The Company understands and agrees that the Government reserves the right to prosecute it for any such offenses. The Company further understands that any perjury, false statements or declarations, or obstruction of justice relating to its

obligations under this Plea Agreement shall constitute a breach of this Plea Agreement. However, in the event of such a breach, the Company will not be allowed to withdraw this guilty plea.

17. **Database Update**

The Company agrees that within five (5) days of entry of the Plea Agreement the Company will provide to the Government an electronic copy of the SQL server databases and/or files reflecting transactions conducted, and account owner or operator information, for all e-gold Ltd. and Gold & Silver Inc. transactions from January 8, 2008.

18. **Waiver of Statute of Limitations**

It is further agreed that should the convictions following the Company's plea of guilty pursuant to this Plea Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement (including any counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Plea Agreement) may be commenced or reinstated against the Company, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement or reinstatement of such prosecution, which commencement or reinstatement shall occur within one year of the conviction being vacated. It is the intent of this Plea Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Plea Agreement is signed.

19. **Complete Agreement**

No other agreements, promises, understandings, or representations have been made by the parties or their counsel than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by an authorized representative of the Company, defense counsel, and an Assistant United States Attorney for the District of Columbia.

The Company further understands that this Plea Agreement is binding only upon the Criminal Division (including the Fraud and Public Corruption Section and the Asset Forfeiture Unit) of the United States Attorney's Office for the District of Columbia and the Criminal Division (including the Computer Crime and Intellectual Property Section and the Asset Forfeiture and Money Laundering Section) of the U.S. Department of Justice. This Plea Agreement does not bind the Civil Divisions of these Offices or any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor. It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against the Company.

If the foregoing terms and conditions are satisfactory, the Company may so indicate by having its authorized representative sign this Plea Agreement in the space indicated below and returning the original to us once it has been signed by it and by you or other defense counsel.

Sincerely yours,

*Jeffrey A Taylor /HS*
JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

*[signature]*
JONATHAN HARAY
Assistant United States Attorney

*[signature] /For*
KIMBERLY KIEFER PERETTI
Senior Counsel
Criminal Division
Department of Justice

*[signature] /For*
LAUREL LOOMIS RIMON
Deputy Chief
Criminal Division
Department of Justice

12

I have read this Plea Agreement and have discussed it with my attorney, Aron Raskas, Esq. I fully understand this Plea Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Plea Agreement fully. I am pleading guilty because I am in fact guilty of the offense(s) identified in this Plea Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Plea Agreement. I am satisfied with the legal services provided by my attorney in connection with this Plea Agreement and matters related to it.

Date: 7/21/2008

Gold & Silver Reserve, Inc., Defendant
Authorized Representative

I have read each of the pages constituting this Plea Agreement, reviewed them with my client, and discussed the provisions of the Plea Agreement with my client, fully. These pages accurately and completely sets forth the entire Plea Agreement. I concur in my client's desire to plead guilty as set forth in this Plea Agreement.

Date: 7-21-08

Aron Raskas, Esq.
Attorney for the Defendant