UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | Cr. No.  07-109 (RMC) |
| : | |
| : | Violation: |
| v.   : | 26 D.C. Code § 1002 (Engaging in the Business of Money Transmission Without a License) |
| : | |
| **REID A. JACKSON,**   : | |
| : | |
| **Defendant**   : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

### BACKGROUND

Reid Jackson is before the Court having pleaded guilty to Engaging in the Business of Money Transmission Without a License.  This offense arises from Mr. Jackson's role in the operation of Gold & Silver Reserve, Inc. and E-gold Ltd., which collectively owned and operated the E-gold digital currency system.  At all times relevant to this case, Mr. Jackson owned an interest and held the position of Managing Director of Gold & Silver Reserve, Inc., and was also a Director of E-gold Ltd.  For several years, Mr. Jackson played an active role the operation of the E-gold digital currency system.  Mr. Reid's brother, Dr. Douglas Jackson, and Barry Downey created the E-gold system.

E-gold was founded, at least in part, based upon a philosophy that opposed government regulation of financial institutions and the banking industry.  E-gold's founders and principals blindly followed that philosophy to the point of ignoring for over a decade laws designed to protect

citizens from precisely the types of criminals that require anonymity. E-gold's design permitted users to conduct financial transactions anonymously on the Internet without regard for banking laws designed to identify and prevent criminal conduct. That feature was no accident or technical oversight. It was a founding principle of the business. As a result, criminal activity flourished facilitated by E-gold. The E-gold system did not merely tolerate this illegal activity, it thrived on the profits generated from users eager to advance criminal objectives by taking advantage of E-gold's see-no-evil, hear-no-evil method of conducting worldwide financial transactions.

For the most part, these criminal E-gold users were not prohibited from operating after being identified, nor were criminal transactions reported to authorities. Instead, insignificant and ineffective restrictions were generally placed on the criminal accounts, which failed to prevent the users from anonymously withdrawing the proceeds of their criminal activity from the E-gold system. In some instances, customers were even encouraged to avoid E-gold's restrictions by opening new, unrestricted accounts using funds transferred from restricted accounts.

Mr. Jackson has admitted that he is guilty of violating the District of Columbia law prohibiting Engaging in the Business of Money Transmission Without a License. The Court should impose a sentence that reflects the seriousness of Mr. Reid's offense.

## GOVERNMENT'S POSITION ON SENTENCING

**I.    Mr. Jackson Deserves a Significant Punishment Under the D.C. Superior Court Voluntary Sentencing Guidelines.**

As Mr. Jackson has pleaded guilty to a violation of District of Columbia law, the D.C. Superior Court Voluntary Sentencing Guidelines apply here. The offense of Engaging in the Business of Money Transmission Without a License, which carries a maximum punishment of five

years of imprisonment, is classified as a Group 8 offense. Given Mr. Jackson's lack of criminal history, a Group 8 offense calls for a sentence of 6 to 24 months of incarceration, probation, or a combination of both. The government has agreed not to seek greater than 6 months of imposed incarceration in this case.

### II. Mr. Jackson Deserves a Significant Punishment Under Section 3553.

The government respectfully submits that the factors under Title 18, United States Code Section 3553(a) independently support a sentence of six months of incarceration.

#### A. Nature of the Offense

Operating an unlicensed money transmitting business poses a serious risk to the public, and calls for a serious punishment. *See, e.g., United States v. Elfgeeh*, 515 F.3d 100, 136-39 (2nd Cir. 2008) (upholding, in relevant part, 188-month prison term for defendant convicted of violating federal unlicensed money transmitting and structuring laws, where over $20 million was transferred using defendant's "hawala" business). Businesses like E-gold enable criminals to finance, carry out, and promote illegal activity, and to transfer criminal proceeds without detection by law enforcement. Indeed, the federal analogue to 26 D.C. Code § 1001, 18 U.S.C. § 1960, was specifically enacted "to prevent terrorists, money launderers, and other criminals from exploiting unregulated banking systems." *See United States v. Bariek*, No. 01:05CR150 (JCC), 2005 WL 2334862, at *2 (E.D.Va. 2005) (imposing 18-month sentence for violation of 18 U.S.C. § 1960 based on defendant's operation of a "hawala" system that transmitted $4.9 million to Middle East countries).

In this case, Mr. Jackson's role in the E-gold operation lasted for several years. E-gold's lack of meaningful oversight, anonymous transactions, and criminal use were ongoing during that period. Moreover, Mr. Jackson's involvement in this enterprise continued long after Mr. Jackson was on

notice of E-gold's failure to properly register as a money transmitting business, including throughout the pendency of this case. Even post-Indictment, while under the Court's supervision, Mr. Jackson neither disassociated himself with E-gold's unlicensed money transmitting business, nor did he take timely remedial steps to ensure that E-gold operated within the bounds of the law.

### B. History and Characteristics of the Defendant

According to the Presentence Report, Mr. Jackson has the benefit of a loving and supportive partner, as well as a caring family. He was raised in a stable and supportive environment. Mr. Jackson has a college degree and is a partner in his own business. By all indications, he is an intelligent and attentive person who should have known better than to engage in this criminal enterprise, but did so anyway. Accordingly, Mr. Jackson's history and characteristics do not mitigate or justify his conduct in this case.

### C. The Need for the Sentence to Reflect the Seriousness of the Offense

A sentence of six months of incarceration would reflect the seriousness of Mr. Jackson's conduct and would provide just punishment for his actions.

### D. The Need for the Sentence to Afford Adequate Deterrence

A sentence of 6 months of incarceration would serve as an important deterrent to others who might be considering committing similar offenses. The digital currency industry will undoubtedly notice what happens in this case. A more lenient sentence may have the unintended consequence of emboldening those who would follow in the footsteps of the defendants in this case by ignoring banking laws that are designed to detect and prevent criminal conduct.

    E.  <u>The Need to Provide the Defendant Educational or Vocational Training</u>

Unlike many other defendants who come before the Court, Mr. Jackson has had the benefit of a supportive upbringing, including educational opportunities. He graduated from the University of Pittsburgh with a Bachelor of Arts degree in 1987. He also is a partner in Jackson & Escher, Inc., which provides him a comfortable living. Mr. Jackson does not need educational or vocational training.

## CONCLUSION

The United States respectfully requests that the Court sentence Mr. Jackson to 6 months of incarceration, and in accordance with the factors articulated in 18 U.S.C. § 3553(a), to punish him for his conduct and to deter others who might consider committing similar misconduct.

                                        Respectfully submitted,

                                        JEFFREY A. TAYLOR
                                        UNITED STATES ATTORNEY

By:      /s/
        Jonathan W. Haray, D.C. Bar No. 480140
        Assistant United States Attorney
        Fraud & Public Corruption Section
        555 Fourth Street, N.W.
        Washington, DC 20530
        (202) 353-2877
        jonathan.haray@usdoj.gov

        Kimberly Kiefer Peretti
        Senior Counsel
        U.S. Department of Justice
        Computer Crime and Intellectual Property Section, Criminal Division
        1301 New York Ave., NW, Suite 600
        Washington, D.C. 20530
        (202) 353-4249
        kimberly.peretti@usdoj.gov

>Laurel Loomis Rimon
>Deputy Chief for Litigation
>U.S. Department of Justice
>Asset Forfeiture and Money Laundering Section, Criminal Division
>1400 New York Ave., NW, Room 2200
>Washington, D.C.  20530
>(202) 514-1315
>*Laurel.Loomis.Rimon@usdoj.gov*