UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 07-109-03 (RMC) |
| ) | |
| DOUGLAS LEE JACKSON, ) | FILED |
| ) | DEC 18 2008 |
| Defendant. ) | NANCY MAYER WHITTINGTON, CLERK |
| ) | U.S. DISTRICT COURT |

## SENTENCING MEMORANDUM

Douglas Lee Jackson, M.D., was sentenced on November 20, 2008, after he pled guilty to Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956, and Operation of Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960. Because the Court entered a sentence that varied from the U.S. Sentencing Guidelines, it explains its rationale in this sentencing memorandum.

Dr. Jackson is the founder and head of e-Gold, Ltd. ("e-Gold"), and Gold & Silver Reserve, Inc. ("G&SR"). Together, these businesses issued a digital currency known as "e-gold," which functioned as an alternative payment system and operated via the Internet using the domain name www.e-gold.com. The digital currency was a medium of exchange over the Internet, backed by precious metals and offering global acceptance without the need for conversion between national currencies. Neither e-Gold nor G&SR was registered with the federal government or any state. The private nature of transactions in e-gold attracted expanding numbers of persons engaged in scams and other Internet-related criminal activity.

Dr. Jackson and his co-defendants vigorously contested the Government's interpretation and application of 18 U.S.C. § 1960 to their businesses, insisting that they were not engaged in money transmitting because they did not handle currency. This issue was very seriously litigated but, once the Court interpreted the statute, Dr. Jackson and his co-defendants immediately entered plea negotiations.

In his plea agreement, Dr. Jackson and the Government agreed that he was liable for $30,000 in money laundering but the Probation Office took into account related conduct and concluded that the companies had actually engaged in money laundering in an amount over $1,000,000.00. The Court agreed with the higher figure, resulting in an Offense Level of 34, minus 3 for early acceptance of responsibility, that led to an adjusted Offense Level of 31. Dr. Jackson had no criminal record so his Criminal History category was One. His sentencing range under the Guidelines, therefore, was a sentence between 108 and 135 months.

The Court then considered the sentencing factors at 18 U.S.C. § 3553(a) to identify a sentence that would be sufficient but not greater than necessary. When considering the seriousness of the offense, the Court recognized two different levels: the consequences of the offense of not registering as a money transmitter, which "allowed large numbers of persons to engage in hidden criminal conduct that pr[e]yed on unknow[n] numbers of others," Sentencing Hr'g Tr. 3, Nov. 20, 2008, and Dr. Jackson's own actions. The Court found:

> [Dr. Jackson] had no intention of creating a system that was so useful to lawless people. But immediately [it] proved to be. That he took some actions to try to prevent the use of the system by those violating the law, limited although that might have been in light of the numbers [of people using it]. And . . . he did have bad legal advice on the question of whether or not the businesses needed to be registered and licensed. . . .

>So I find it's a very serious offense[] but that the culpability of even this defendant for the seriousness of these offenses isn't as great as the offenses themselves [would suggest].

*Id.* at 3-4. The Court further expressed "no doubt that Dr. Jackson has respect for law." *Id.* at 4. "He wanted to set up a currency system that avoided government oversight. That's clear[ly] what he wanted to do. He thought he could do that. Turns out he couldn't." *Id.* Dr. Jackson obtained legal advice to the effect that the e-gold operation was not a money transmitting business. The Court is convinced that he did not have a contemptuous attitude towards the law and wishfully thought he was in technical conformance.

"In terms of personal deterrence," the Court had no concern about a need to deter further misconduct by Dr. Jackson, although sending a message to those who engage in Internet crime that their crimes will be strongly prosecuted might counsel a jail term. *Id.* at 5. The Court found no need for incarceration to protect the public from Dr. Jackson or provide him with needed training or medical care. Thus, the Court concluded that providing "just punishment" for the offenses "here does not require a sentence of incarceration." *Id.* at 4.

In addition to the above, the history and characteristics of Dr. Jackson persuaded the Court to impose a lesser sentence. After a career as a physician, he used his imagination and intelligence to conceive of e-gold, which, conceptually, is not illegal. He invested everything he, and others, could contribute to getting e-gold operational and accepted. His errors were in thinking e-Gold was not transmitting money because it did not handle currency, as his lawyer advised, and in not shutting the system down when it obviously became swamped with users for illegal purposes, on the premise that the business could not be liable for customers' actions. Now that the legal issues

are resolved, he has committed e-Gold and G&SR to a vigorous compliance and oversight program which could only succeed if he were there to head the companies. Since there is no reason to shut down e-Gold and G&SR, and every reason to have them come into legal compliance, a sentence of incarceration for Dr. Jackson would be counter-productive.

For these reasons, the Court sentenced Dr. Jackson to a term of time served with a period of supervised release of 36 months and with a condition of supervised release that Dr. Jackson be monitored by location monitoring technology, at his own cost, for a period of 180 days. During the period of location monitoring, Dr. Jackson will be restricted to his residence at all times except for employment, education, religious services, medical substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations or other activities as pre-approved by the Probation Officer. The Court waived payment of a fine due to inability to pay and authorized the Probation Office to lift the requirement that Dr. Jackson pay the cost of location monitoring if it is satisfied that he cannot pay for it. In addition, the Court ordered Dr. Jackson to contribute 300 hours of community service during the period of supervised release, with at least 100 hours served in each year until the total of 300 is reached. Additional terms of his sentence are recorded in the Judgement and Commitment.

**SO ORDERED.**

Date: 16 Dec 2008

ROSEMARY M. COLLYER
United States District Judge